HORIZON CORPORATION, Plaintiff,

v.

John M. ANSELMI et al., Defendants.

Civ. A. No. 79–2410.

United States District Court,
District of Columbia.

Jan. 22, 1980.

Ralph L. Ellis, Richard F. Czaja, Fran M. Jacobs, of Shea & Gould, New York City, Mario V. Mirabelli and William J. Conti of Shea & Gould, Washington, D.C., for plaintiff.

Arthur F. Mathews, Arthur Z. Gardiner, Jr., James Robertson, Wayne A. Koonce, Joseph E. Killory, Jr., Stephen W. Kidder, of Wilmer & Pickering, Washington, D.C., G. Kevin Conwick and Ann B. Frick, of Holme, Roberts & Owen, Denver, Colo., for defendants constituting the "Anselmi Group".

Alan Raywid and Daniel Stark, of Cole, Raywid & Braverman, Washington, D.C., for defendant United Cable Television Corp.

Joel R. Kaswell and Barry H. Gottfried, of Stiller, Adler, Schwartz & Kaswell, P.C., Washington, D.C., for defendant Frank Solomon.

## MEMORANDUM

GASCH, District Judge.

Presently before the Court are four motions: (1) the motion for a preliminary injunction of plaintiff Horizon Corporation ("Horizon"), (2) the motion for pretrial conference and for a trial date of defendants constituting the "Anselmi group," (3) the cross-motion relating to discovery of plaintiff Horizon, and (4) the motion for an order authorizing the issuance of the final election report of defendants Anselmi group. For the reasons set forth below, the Court denies the first motion, denies the second motion without prejudice to its renewal by any party at a later date, denies the third motion, and grants the fourth motion.

### I.

#### A. *The Parties.*

Plaintiff Horizon is a Delaware corporation whose executive offices are located in Tucson, Arizona. Its common stock is registered with the Securities and Exchange Commission ("SEC") pursuant to section 12(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78*l*(b), and is listed on the New York Stock Exchange. It is engaged in the development of planned communities in Arizona, New Mexico, and Texas, the sale of improved and unimproved lots, the sale and rental of houses, and the operation of certain related commercial facilities.

Named as defendants are twenty individuals, a limited partnership, and a corporation. Eighteen of the individual defendants—John M. Anselmi, Paul D. Anselmi, William A. Anselmi, A. M. Carollo, Sr., V. Michael Crockett, Albert A. Etcheverry, Rockie E. Gamber, Clarice J. Giovanini, Joseph E. Giovanini, Isadore Handmaker, Stanley L. Heiner, William W. Kingery, Jr., Gene W. Schneider, Randy E. Stelk, Paul Syphus, Mario Temperini, Michael J. Vase, and Harold G. Ward—and the Colorado-based limited partnership, Giovanini Investments, Ltd., are referred to herein as the "Anselmi group." The only two individual defendants who are not included herein as members of the Anselmi group are Frank Solomon and John Woodcock.

The remaining defendant, United Cable Television Corporation ("United Cable"), is also not included herein as a member of the Anselmi group. United Cable is a Delaware corporation whose executive offices are located in Denver, Colorado. Its common stock is registered with the SEC pursuant to the Exchange Act and is traded over-the-counter. Four of the individual defendants are associated with United Cable. Defendants Carollo and Joseph Giovanini are directors of United Cable, defendant Kingery is a vice president of United Cable, and defendant Schneider is the president and chief executive officer of United Cable.

## B. *Plaintiff's Complaint.*

On September 11, 1979, plaintiff filed its complaint in this action. The complaint sets forth five counts. The first count alleges that defendants have violated and continue to violate section 13(d) of the Exchange Act, as amended, 15 U.S.C. § 78m(d), and rule 13d–1, 17 C.F.R. § 240.-13d–1, promulgated thereunder in that their Schedule 13D was not timely filed and that their Schedule 13D and their first, second, and third amendments thereto contained material misstatements and omissions regarding "the composition of the group, the date and nature of its formation, its intentions with regard to Horizon, and its transactions in and holdings of Horizon common stock." [1]

The second count alleges that defendants have violated and continue to violate sections 14(a), 14(d), and 14(e) of the Exchange Act, 15 U.S.C. §§ 78n(a), 78n(d) & 78n(e), and rule 14a–9, 17 C.F.R. § 240.14a–9, promulgated thereunder in that their Schedules 14B were not timely filed and contained material misstatements and omissions. The third count alleges that defendants have violated and continue to violate section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and rule 10b–5, 17 C.F.R. § 240.-10b–5, promulgated thereunder in that they have manipulated the market for Horizon stock.

The fourth count alleges that defendants violated section 14(d) of the Exchange Act, 15 U.S.C. § 78n(d), and rule 14d–1 17 C.F.R. § 240.14d–1, promulgated thereunder in that they failed to file a Schedule 14D–1 in connection with a tender offer that they intend to make. The final count alleges that defendants circulated a letter to Horizon stockholders dated September 6, 1979 and an accompanying proxy statement in opposition to management that were "false and misleading in numerous respects." [2]

The complaint further alleges that defendants' violations of the Exchange Act have caused plaintiff and its stockholders irreparable injury. To remedy these viola-tions, plaintiff seeks to have this Court enjoin defendants from soliciting any proxies from Horizon stockholders for the annual meeting of Horizon stockholders scheduled for September 27, 1979, from exercising any proxies obtained from Horizon stockholders at the annual meeting, from voting any shares of Horizon common stock at the annual meeting, and from acquiring or disposing of any Horizon common stock. Plaintiff also seeks an award of damages, compensation for attorneys' fees and costs, and such other relief as the Court deems just and proper.

## C. *Chronology of the Litigation.*

On September 12, 1979, one day after the complaint was filed, the Court held a hearing on plaintiff's motions for a temporary restraining order, for expedited discovery, and for an order appointing special process servers. On the following day, September 13, 1979, the Court denied the motion for a temporary restraining order and granted the other two motions.

The Court next scheduled a hearing on plaintiff's motion for a preliminary injunction for September 24, 1979. On that date, plaintiff's counsel in open Court stated that plaintiff needed to conduct more discovery and requested that the hearing on plaintiff's motion for a preliminary injunction be delayed until this discovery was concluded. The Court granted this request, but nevertheless heard testimony from defendant Schneider, who testified about his and the Anselmi group's activities with respect to Horizon, and his and several group members' association with United Cable.

The parties agreed that the annual meeting of Horizon stockholders should be held as scheduled on September 27, 1979 and that independent inspectors of election should be appointed for the annual meeting. The parties disagreed as to other matters with respect to the annual meeting and, at the request of the Court, submitted memoranda stating their positions on these mat-

---

**1.** Complaint ¶ 15.

**2.** *Id.* ¶ 68.

ters. On September 26, 1979, the Court ordered that the inspectors issue a preliminary report of the count of the votes to the parties; that the parties be allowed to examine and challenge the votes for a period of seven days after the issuance of the preliminary report; that the inspectors then issue to the parties and forward to the Court a tentative final report of the count of the votes; that the inspectors not issue a final report of the count of the votes or declare final results of the count of the votes until so permitted by order of the Court; and that the annual meeting not be adjourned until the inspectors issue a final report or declare the final results.

The annual meeting was held as scheduled on September 27, 1979. According to the tentative final report of the inspectors of election, holders of record representing 3,358,242 shares of Horizon common stock were present in person or by proxy at the annual meeting, and the tentative final count of the voting at the meeting is as follows:

Directors:

| | |
|---|---|
| Anselmi group slate | 1,952,973 |
| Management slate | 1,240,331 |

Nelson employment contract and stock appreciation rights plan:

| | |
|---|---|
| Disapproval | 1,935,208 |
| Approval | 1,420,134 |

Ratification of grant of stock option to Nelson:

| | |
|---|---|
| Against | 2,199,666 |
| For | 1,151,958 |

On October 9, 1979, plaintiff filed a notice of depositions stating its intention to take the depositions of thirty individuals. On October 12, 1979, defendants Anselmi group moved for a protective order regarding this notice of depositions. The Court heard oral argument on this motion on October 15 and 19, 1979. At the October 19 hearing, the parties' counsel informed the Court that they had agreed to a schedule of depositions during the period commencing on October 23, 1979 and ending on November 21, 1979. In a memorandum-order dated October 19, 1979, the Court ordered the parties to comply with this schedule.

On November 9, 1979, defendants Anselmi group moved for pretrial conference and for a trial date. Plaintiff opposed this motion, and on November 21, 1979 filed a cross-motion relating to discovery, in which it proposed to take fifty-nine more depositions commencing on December 17, 1979 and ending on February 1, 1980. Defendants Anselmi group opposed this cross-motion, and on November 30, 1979 filed a motion for an order authorizing the issuance of the final election report. Plaintiff opposed this motion.

On December 20, 1979, the Court held an evidentiary hearing on the four pending motions: (1) plaintiff's motion for a preliminary injunction; (2) defendants Anselmi group's motion for pretrial conference and for a trial date; (3) plaintiff's cross-motion relating to discovery; and (4) defendants Anselmi group's motion for an order authorizing the issuance of the final election report. At this evidentiary hearing, the Court heard the testimony of seven witnesses. Plaintiff called three witnesses: (1) Sidney Nelson, plaintiff's chief executive officer; (2) Raymond S. Troubh, a partner in the investment banking firm of Lazard Freres & Cie.; and (3) Russell Houseman, the head of the solicitation division of D. F. King & Company, Inc. Defendants Anselmi group called four witnesses: (1) Kevin Conwick, a partner in the law firm of Holme Roberts & Owen; (2) J. William Robinson, a principal of Georgeson & Company; (3) defendant Schneider; and (4) defendant John Anselmi. During the course of the testimony of the seven witnesses, the Court received various exhibits into evidence. At the conclusion of the testimony, the Court heard oral argument of counsel on the pending motions, and requested that, if they be so advised, the parties submit proposed findings of fact and conclusions of law and supplemental memoranda on the motions. The parties have complied with this request.

D. *Findings of Fact Regarding the Four Pending Motions.*

The Court has carefully considered the four pending motions, the memoranda and

proposed findings of fact and conclusions of law submitted in support thereof and in opposition thereto, the testimony adduced and the evidence received at hearings held on September 24 and December 20, 1979, the transcripts of numerous depositions taken in this action, the argument of counsel in open Court, and the entire record herein. On the basis of the foregoing, the Court makes the findings of fact that follow.

### 1. The Formation of the Anselmi Group and Their SEC Filings.

On May 21, 1979, twelve Horizon stockholders, eleven of whom are individual defendants in this action, held a meeting in Las Vegas, Nevada at which they discussed joining together as a group in an effort to change the management of Horizon. The twelve stockholders were the three Anselmis, Ed Blecker (who is not a party to this action), Carollo, Gamber, Joseph Giovanini, Kingery, Schneider, Solomon, Syphus, and Temperini. Also present at this meeting was a lawyer, Thomas Smith, who advised the twelve stockholders and distributed to them a questionnaire seeking information to determine whether they should file a Schedule 13D with the SEC.

On May 24, 1979, some of the twelve stockholders who attended the May 21 meeting in Las Vegas retained the law firm of Holme Roberts & Owen ("HRO"), replacing Thomas Smith as their counsel. These stockholders wanted HRO to advise them whether they should file a Schedule 13D, and, if so, to prepare and file a Schedule 13D.

On the following day, May 25, 1979, John Anselmi, John Giovanini, and Kingery met with HRO lawyers Kevin Conwick and Ann Frick at the offices of HRO. At this meeting counsel learned that ten of the twelve stockholders who attended the May 21 meeting in Las Vegas had agreed to act together to seek control of Horizon and that the other two stockholders, Blecker and Solomon, had refused to join the ten in this agreement. Counsel determined that the ten stockholders constituted a group that was required to make a Schedule 13D filing.

Counsel then gathered the necessary information and on May 31, 1979 filed a Schedule 13D. Disclosed as group members in this Schedule 13D were the ten stockholders, Stelk, and Giovanini Investments Ltd., a limited partnership controlled by Joseph Giovanini.

On June 13, 1979, most of the members of the Anselmi group met with Conwick and Frick at the offices of HRO. Also present at this meeting was Richard Nye of Georgeson & Company, a well known proxy solicitation firm. At this meeting counsel reviewed the stockholdings of the group members to determine whether any changes had occurred, and further advised the group members of their obligations under the federal securities laws. The group members further discussed their intentions with respect to Horizon and the possibility of adding new members to the group, and heard from Nye as to the possibility of their succeeding in a proxy contest.

On June 20, 1979, counsel filed amendment no. 1 to the group's Schedule 13D. This amendment updated the stockholdings of the group members, but did not disclose any additional members because no additional persons had yet agreed to join the group.

On July 30, 1979, the group members again met with Conwick and Frick at the offices of HRO. Also present at this meeting were three additional Horizon stockholders—Etcheverry, Charles Luten, and Keith Spencer. At this meeting the group decided to proceed with a proxy contest, and appointed a four-member executive committee consisting of Schneider, who was named chairman, John Anselmi, Joseph Giovanini, and Kingery. The names of various persons were discussed at this meeting. Some of these persons were mentioned as possible additional group members, and others, including several brokers, were mentioned as possibly sympathetic to, or supportive of, the group in a proxy contest. Of the many names discussed at this meeting, only three—Handmaker, Heiner, and Vase—later agreed to join the group.

Two stockbrokers, George and Nick Bapis, had also intended to participate in the July 30, 1979 meeting. When the Bapis brothers arrived at the offices of HRO for the meeting, Conwick suggested to them that it would be inappropriate for any broker to participate in the group, and asked them to consult by telephone with their own counsel. The Bapis brothers did so, and they did not participate at this meeting. On the advice of Conwick, the group precluded the Bapis brothers and all other brokers from becoming group members.

On August 1, 1979, counsel filed amendment no. 2 to the group's Schedule 13D. This amendment added Etcheverry, Heiner, and Vase as group members, changed the statement of the group's purposes to reflect its plan to solicit proxies, and updated the group members' stockholdings.

On August 27, 1979, counsel filed one Schedule 14B for each of the group members. These Schedules 14B reflected the group's decision to solicit proxies. On September 4, 1979, counsel filed amendment no. 3 to the group's Schedule 13D. This amendment added Crockett and Handmaker as group members. Also on September 4, 1979, counsel filed Schedules 14B for Crockett and Handmaker. On September 21, 1979, counsel filed amendment no. 4 to the group's Schedule 13D and amendments to each group member's Schedule 14B. These amendments to the Schedule 13D and the Schedules 14B corrected inaccuracies contained in prior filings that were brought to the attention of counsel.

Under these circumstances, the Court finds that plaintiff has failed to show that the Anselmi group's Schedule 13D and the four amendments thereto and the Anselmi group members' Schedules 14B and amendments thereto contained any material misstatements or omissions. *See TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). The Court also finds that plaintiff has failed to show that the Schedule 13D and the four amendments thereto and the Schedules 14B and the amendments thereto were not timely filed.

2. *The Alleged Concealment of Certain Defendants' Membership in the Anselmi Group.*

In its complaint, plaintiff alleges that the membership in the Anselmi group of certain defendants—Solomon, Woodcock, and United Cable—has been concealed. With respect to Solomon, plaintiff alleges that he was and is an undisclosed member of the Anselmi group. The Court finds that this allegation is without basis. Solomon was asked to join the Anselmi group many times, but consistently refused to do so.

With respect to Woodcock, plaintiff alleges that he was and is an undisclosed member of the Anselmi group, and that he has entered into agreements with, and has a relationship with, the Anselmi group. The Court finds that these allegations are without basis.

With respect to United Cable, plaintiff alleges that it was and is an undisclosed member of the Anselmi group, that John Anselmi controls United Cable, that the Anselmi group's purpose in obtaining control of Horizon is to obtain a New York Stock Exchange listing for United Cable, and that the Anselmi group intends to merge or otherwise effect a business combination between Horizon and United Cable. The Court finds that these allegations are without basis.

In its complaint, plaintiff further alleges that the membership in the Anselmi group of certain other defendants—Etcheverry, Handmaker, Heiner, and Vase—was not fully and timely disclosed. The Court finds that this allegation is without basis. The membership of Etcheverry, Heiner, and Vase in the Anselmi group was disclosed in the second amendment to the group's Schedule 13D, which was filed with the SEC on August 1, 1979. Similarly, the membership of Handmaker in the Anselmi group was disclosed in the third amendment to the group's Schedule 13D, which was filed with the SEC on September 4, 1979.

Under these circumstances, the Court finds that plaintiff has failed to demon-

strate that Solomon, Woodcock and United Cable were and are undisclosed members of the Anselmi group. *See SEC v. Savoy Industries, Inc.*, 190 U.S.App.D.C. 252, 587 F.2d 1149 (D.C.Cir. 1978). The Court also finds that plaintiff has failed to demonstrate that the membership of Etcheverry, Handmaker, Heiner, and Vase in the Anselmi group was not fully and timely disclosed. *See id.*

3. *Allegations Relating to Market Manipulation, Illegal Tender Offer, and False and Misleading Proxy Materials.*

In the final three counts of its complaint, plaintiff alleges that the Anselmi group has manipulated the market for Horizon stock, made or intends to make a tender offer for Horizon stock without filing a Schedule 14D–1, and distributed proxy materials that were false and misleading. The Court finds that these allegations are without basis.

The Court finds that plaintiff has failed to demonstrate that the Anselmi group manipulated the market for Horizon stock. *See Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787 (2d Cir. 1969). The Court also finds that plaintiff has failed to demonstrate that the Anselmi group made or has any plans to make a tender offer for Horizon stock. *See Smallwood v. Pearl Brewing Co.*, 489 F.2d 579 (5th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974). The Court further finds that plaintiff has failed to demonstrate that the proxy materials distributed by the Anselmi group were false or misleading in any material respect. *See TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

4. *The Alleged Illegal Solicitation of Proxies for the Anselmi Group by Certain Brokers from their Customers.*

Most of the discovery that plaintiff has conducted to date has not been concerned with the allegations contained in its complaint. Rather, plaintiff's discovery thus far has centered on developing and proving its theory that certain brokers illegally solicited proxies for the Anselmi group from their customers. In its pursuit of this theory, plaintiff has focused on the activities of five brokers—George Bapis, Nick Bapis, Paul Soule, Stephen Springer, and Louis Tonetti.

With respect to plaintiff's theory regarding brokers, the Court finds that plaintiff has failed to demonstrate that: (1) any broker became a member of the Anselmi group; (2) any broker agreed to act in concert with the group or any of its members in the acquisition, holding, voting, or disposition of Horizon stock; (3) any member of the Anselmi group requested any broker to solicit proxies for the group; and (4) any broker solicited proxies for the Anselmi group. *See SEC v. Savoy Industries, Inc.*, 190 U.S.App.D.C. 252, 587 F.2d 1149 (D.C.Cir. 1978); SEC Exchange Act Release No. 34–7208 (Jan. 7, 1964).

5. *Irreparable Harm.*

The Court finds that plaintiff has failed to demonstrate that the injunctive relief it seeks is necessary to prevent irreparable harm. The Court further finds that plaintiff has failed to show that it will suffer irreparable harm if the Anselmi group's slate of directors is seated as the board of directors of Horizon Corporation.

6. *Harm to Other Parties.*

The Court finds that plaintiff has failed to show that granting the injunctive relief it seeks will not substantially harm other parties. The Court also finds that granting plaintiff the injunctive relief it seeks will substantially harm the stockholders of Horizon, the majority of whom, according to the inspectors' tentative final report, have voted to replace the incumbent directors with the Anselmi group's slate of directors. The Court further finds that granting plaintiff the injunctive relief it seeks will substantially harm the Anselmi group, whose slate of directors, according to the inspectors' tentative final report, received substantially more votes than management's slate and, if it were not for this Court's September 26,

1979 order, would be presently entitled to serve as directors of Horizon Corporation. Finally, the Court finds that granting plaintiff the injunctive relief it seeks will substantially harm Horizon itself, which would continue to use its corporate assets to finance the continuation of this litigation.

### 7. *Public Interest.*

The Court finds that plaintiff has failed to show that the public interest favors the granting of the preliminary injunction it seeks. The Court also finds that the public interest favors the granting of defendants Anselmi group's motion for an order authorizing the issuance of the final election report. The Court further finds that the public interest favors allowing the Anselmi group's slate of directors—which, according to the inspectors' tentative final report, received substantially more votes than present management's slate—to serve as the board of directors of Horizon Corporation until a trial on the merits can be held.

### II.

As indicated above, there are four motions pending before the Court. The Court first discusses plaintiff's motion for a preliminary injunction, and then addresses the other three motions before it. Finally, the Court considers other matters that are important for an orderly continuation of this action.

### A. *Preliminary Injunction.*

■ To be entitled to a preliminary injunction, a plaintiff must demonstrate that (1) it has a substantial likelihood of prevailing on the merits of its claims; (2) it will suffer irreparable harm if a preliminary injunction is not issued; (3) the issuance of a preliminary injunction will not substantially harm other parties; and (4) the public interest favors the issuance of a preliminary injunction. *A Quaker Action Group v. Hickel*, 137 U.S.App.D.C. 176, 181, 421 F.2d 1111, 1116 (D.C.Cir. 1969); *see Virginia Petroleum Jobbers Association v. FPC*, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (D.C.Cir. 1958).

As indicated above, plaintiff's complaint sets forth five counts. With respect to these five counts, the Court has found that plaintiff has failed to show that (1) the Anselmi group's Schedule 13D and the amendments thereto were not timely filed or contained any material misstatements or omissions; (2) the Anselmi group members' Schedules 14B and amendments thereto were not timely filed or contained any material misstatements or omissions; (3) defendants have manipulated the market for Horizon stock; (4) defendants had or have any plans to make a tender offer for Horizon stock; and (5) the proxy materials distributed by the Anselmi group were false or misleading in any material respect.

As also indicated above, plaintiff has focused its discovery efforts on developing and proving its theory that certain brokers illegally solicited proxies for the Anselmi group from their customers. With respect to this theory, which is not contained in plaintiff's complaint, the Court has found that plaintiff has failed to demonstrate that (1) any broker became a member of the Anselmi group; (2) any broker agreed to act in concert with the group or any of its members in the acquisition, holding, voting, or disposition of Horizon stock; (3) any member of the Anselmi group requested any broker to solicit proxies for the group; and (4) any broker solicited proxies for the Anselmi group.

Under these circumstances, the Court concludes that plaintiff has little likelihood of prevailing on the merits of the five counts set forth in its complaint. The Court further concludes that plaintiff has little likelihood of prevailing on the merits of its theory relating to the brokers.

Moreover, on the basis of the findings made above, the Court concludes that plaintiff has failed to demonstrate that (1) it will suffer irreparable harm if a preliminary injunction is not issued; (2) the issuance of a preliminary injunction will not substantially harm other parties; and (3) the public interest favors the issuance of a preliminary injunction. The Court therefore concludes that plaintiff is not entitled to a prelimi-

nary injunction, and that plaintiff's motion for a preliminary injunction should be denied.

### B. *The Other Three Motions.*

 The three remaining motions are defendants Anselmi group's motion for an order authorizing the issuance of the final election report, their motion for pretrial conference and for a trial date, and plaintiff's cross-motion relating to discovery.

In their motion for an order authorizing the issuance of the final election report, the Anselmi group argues that the Court's September 26, 1979 order, designed as a means of exercising judicial control over the election process, has with the passage of time become the functional equivalent of an injunction in plaintiff's favor. The Court agrees and, having concluded that plaintiff is not entitled to a preliminary injunction, concludes that the inspectors should be allowed to issue their final election report.

Defendants Anselmi group, while not explicitly withdrawing their motion for pretrial conference and for a trial date, urge in their most recent memorandum that this motion be denied. Under these circumstances, the Court concludes that this motion should be denied without prejudice to its renewal by any party at a later date.

In its cross-motion relating to discovery, plaintiff seeks to take fifty-nine more depositions. Plaintiff argues that these depositions are necessary to develop and prove its theory relating to certain brokers' illegal solicitation of proxies for the Anselmi group. The Court recognizes that further discovery may be necessary to develop and prove the broker theory, but believes that further discovery should not be conducted until the Anselmi group's slate of directors is seated as the board of directors of Horizon Corporation. The Court therefore concludes that plaintiff's cross-motion relating to discovery should be denied.

### C. *Matters Relating to the Continuation of this Action.*

 At the present posture of this action, the real parties in interest are the incumbent directors of Horizon Corporation and the Anselmi group's slate of directors. In order to preserve this posture, and avoid the possibility that once seated the Anselmi group's slate of directors will decide in Horizon's name to terminate this action against themselves and the other defendants, the Court will permit the individuals on the present management's slate of directors, or any one or more of them, to be joined as plaintiffs in this action. These individuals, or any one or more of them, will be so joined upon the filing with the Clerk of the Court and service on all counsel of record in this action of a praecipe or praecipes entering their appearance or the appearance of any one or more of them.

### III.

For the reasons stated above, the Court denies plaintiff's motion for a preliminary injunction, denies defendants Anselmi group's motion for pretrial conference and for a trial date without prejudice to its renewal at a later date, denies plaintiff's cross-motion relating to discovery, and grants defendants Anselmi group's motion for an order authorizing the issuance of the final election report.